UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| MARTIN P. KIEFABER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HMS NATIONAL, INC., and 1ST CHOICE, INC. (d/b/a RE/MAX ALLEGIANCE),<br><br>Defendants. | Civil Case No. 1:10-cv-1194 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
TO COMPEL (1) THE PRODUCTION OF DOCUMENTS, AND (2) THE TESTIMONY
OF (A) TWO LOCAL FRANCHISE OFFICERS AND (B) A REAL ESTATE AGENT
WHO HAS VOLUNTARILY PROVIDED TESTIMONY FOR HMS**

# Table of Contents

| | | |
|---|---|---|
| | Table of Authorities | iii |
| I. | Background | 1 |
| A. | The Nature of the Case | 1 |
| B. | HMS' Electronic Records | 2 |
| C. | Pertinent Procedural History | 3 |
| II. | Argument | 3 |
| A. | HMS Should Be Required to Produce Documents Responsive to the Document Requests | 3 |
| | 1. HMS Should Be Required to Conduct a Reasonable Search for, and Produce, all Responsive Emails (and Other Documents) Concerning its Practice of Compensating Brokers | 3 |
| | 2. HMS Should Be Required to Produce All Marketing Agreements Entered into by HMS (or its Franchisees) and Brokers | 6 |
| | 3. HMS Should be Required to Produce, at Least Before a Trial on Class-Wide Damages, Several Additional Categories of Information Pertaining to Home Warranty Contracts Concerning Which Compensation Was Paid | 6 |
| | 4. HMS Should Be Required to Produce Documents in the Possession or Custody of Franchisees Who Conduct HMS' Marketing Operations in at Least Three Regions, Including the Mid-Atlantic Region | 9 |
| B. | The Court Should Compel the Appearance of the Two Local Franchise Officers and Cooperating Real Estate Witness | 11 |
| | 1. Plaintiff's Service of the Witnesses was Sufficient | 11 |

    2. The Clerical Error in the Date on the Subpoenas Is Irrelevant ..... 12

    3. Local Rule 30(H) Should Not Preclude Enforcement of the Subpoenas ..... 12

        a. Plaintiff Substantially Complied With Rule 30(H), as the Witnesses Had 12 Days' Advance Notice of their Depositions ..... 12

        b. Alternatively, There is Good Cause to Enforce the Subpoenas Even if They are Not in Literal Compliance With Rule 30(H) ..... 13

  C. The Court Should Effect a Limited Extension of Discovery for purposes of Facilitating the Discovery that is the Subject Matter of this Motion. ..... 14

III. Conclusion ..... 15

# Table of Authorities

**Cases:**

| | |
|---|---|
| *American Angus Ass'n v. Sysco Corp.*, 158 F.R.D. 372, 375 (W.D.N.C. May 23, 1994) | 9 n. 8 |
| *Atlantic Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395 (N.D.Ill.2002) | 12 |
| *Bland v. Fairfax County, Va.*, 275 F.R.D. 466 (E.D. Va. 2011) | 11 |
| *Boucher v. First American Title Ins. Co.*, 2011 WL 5299497 (W.D. Wash. Nov. 4, 2011) | 8-9 |
| *Buycks-Roberson v. Citibank Federal Sav. Bank*, 162 F.R.D. 338, 341-42 (N.D. Ill. 1995) | 8 |
| *Cohen v. City of New York*, 255 F.R.D. 110 (S.D.N.Y. 2008) | 12 |
| *Doe I v. Pauliewalnuts*, 2008 WL 4326473 (W.D.Va. Sept. 19, 2008) | 12 |
| *Floorgraphics, Inc. v. News American Marketing In-Store Services, Inc.*, 2007 WL 1544572 (D. Minn. May 23, 2007) | 12 |
| *Hatfill v. New York Times Co.*, 242 F.R.D. 353, 354 (E.D.Va. 2006) | 9 n. 7 |
| *Steele Software Sys., Corp. v. Dataquick Info. Sys., Inc.*, 237 F.R.D. 561 (D.Md. 2006) | 9 n. 8, 10 |
| *Uniden America Corp. v. Ericsson Inc.*, 181 F.R.D. 302 (M.D.N.C. 1998) | 9 n. 8 |

**Other Authorities:**

| | |
|---|---|
| 12 U.S.C. § 2607(a) | 2 |
| 27 U.S.C. § 2602 | 2 |
| Fed. R. Civ. P. 37 | 1 |

Plaintiff Martin P. Kiefaber ("Plaintiff"), through undersigned counsel, respectfully submits this memorandum of law in support of his motion, Pursuant to Fed. R. Civ. P. 37, to compel the production of documents, and the testimony of two officers of HMS' local franchise and a real estate agent who has voluntarily provided testimony for Defendant HMS National, Inc. ("HMS"). This motion is supported by the "Declaration of Matthew E. Miller in Support of Motion to Compel," ("Miller Declaration") filed herewith. For the reasons stated below, the motion should be granted, and (1) HMS should be required to produce those documents responsive to "Plaintiffs' First Set of Requests for Production of Documents to Defendant HMS National, Inc." (the "Document Requests") described below, and (2) two officers of HMS' local franchise, and a real estate agent who has voluntarily provided testimony for HMS, should be required to appear for depositions.

## I. Background

### A. The Nature of the Case

This is a class action brought on behalf of purchasers of home warranties in connection with the sales or purchases of homes financed by federally related mortgages, wherein it is alleged that illegal kickbacks were paid to real estate agents or firms by the home warranty provider.

Plaintiff Martin P. Kiefaber ("Plaintiff") sold a home located in Arlington, Virginia on or about November 19, 2009. Second Amended Complaint ("SAC"), ¶ 13. In connection with the home sale/purchase, the purchaser was represented by real estate who encouraged Plaintiff to purchase a HMS home warranty for the benefit of the purchasers. *Id.*, ¶ 14.

At the closing, one of the items among Plaintiff's closing costs listed on the Form HUD-1 was a charge of $399.00 for a one-year home warranty purchased from HMS. *Id.*, ¶ 15. The real

estate transaction involved a "federally related mortgage loan" as that term is defined in 27 U.S.C. § 2602. *Id.*, ¶ 16. On or about December 7, 2009, a $60.00 payment was made from HMS to Allegiance (i.e., a portion of that $399.00 charge that Plaintiff paid at closing) in exchange for referring Plaintiff's home warranty business to HMS. *Id.*, ¶ 17. HMS paid this charge to Allegiance for the referral. *Id.*, ¶ 18.

This class action is brought pursuant to Section 8(a) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a). Plaintiff has brought this action on his own behalf and, against HMS, on behalf of a class of persons who purchased home warranties in connection with the sale or purchase of homes financed by federally related mortgages from HMS where any portion of the premium was paid to any real estate agent involved in the transaction, where such payments were conditioned upon the successful completion of the transaction selling the home warranty.

### B. HMS' Electronic Records

Home warranty contracts with HMS are generated, generally, through the submission of a "Home Warranty Application" ("HWA"), Miller Decl., Exh. G, by a real estate professional or a homeowner. In August 2010, HMS began using a new form, the "Home Warranty Worksheet" ("HWW"). An application could also be entered telephonically or on the Internet. Miller Decl., Exh. H.

REDACTED

2

REDACTED

### C. Pertinent Procedural History

The pertinent history of discovery is described in some detail in the Miller Declaration, submitted herewith.

## II. Argument

### A. HMS Should Be Required to Produce Documents Responsive to the Document Requests

#### 1. HMS Should Be Required to Conduct a Reasonable Search for, and Produce, all Responsive Emails (and Other Documents) Concerning its Practice of Compensating Brokers.

Plaintiff has requested production of all documents concerning the compensation by HMS of brokers (including several specific subcategories, such as documents pertaining to policies and procedures, and documents summarizing or reflecting payments).

REDACTED

---

[1] HMS did initially produced some, but not all, blank *forms of* agreements that relate, at least indirectly, to broker compensation.

3

REDACTED

---

[2] These email accounts appears to belong to Mr. Jose Rodriguez, an administrative employee in "Membership Services." Miller Decl., ¶ 21.

REDACTED

It is impossible to conceive how a business enterprise could represent that it has undertaken a reasonable effort to respond to a document request without searching email client software of those employees with responsibilities relevant to the issues at bar. In this action, that would include all sales and marketing employees who interact with real estate professionals, all employees who perform functions relating to the dispensing of compensation to real estate professionals, all employees who receive or enter data pertaining to new home warranty contracts or new relationships with real estate professionals, and all management who supervise (directly or indirectly) those persons. While this would impose *some* burden on HMS, it is hardly an extraordinary burden, and, more importantly, the need for the discovery far outweighs the burden it might impose on HMS.

### 2. HMS Should Be Required to Produce All Marketing Agreements Entered into by HMS (or its Franchisees) and Brokers.

Plaintiff has requested all documents transmitted between HMS and real estate brokers, including, specifically, all contracts entered into between HMS and any brokers.

REDACTED

6

### 3. HMS Should be Required to Produce, at Least Before a Trial on Class-Wide Damages, Several Additional Categories of Information Pertaining to Home Warranty Contracts Concerning Which Compensation Was Paid.

Included in the general request for documents transmitted with brokers, and documents concerning the compensation of brokers, as well as in the more specific request for contracts, would be the completed "Home Warranty Application" forms used by HMS. Also included would be the equivalent records (that are undoubtedly maintained by HMS)[3] pertaining to new contracts generated telephonically or on the Internet.[4]

REDACTED

REDACTED

Plaintiff does not require this information for purposes of litigating class certification, or even a trial on liability issues. Plaintiff would, however, require considerable additional data concerning each relevant home warranty contract for purposes of that portion of a trial that concerns class-wide damages. Plaintiff would agree to defer this production to a time following class certification. *Compare Buycks-Roberson v. Citibank Federal Sav. Bank*, 162 F.R.D. 338, 341-42 (N.D. Ill. 1995) (*after* declaratory class had been certified, ordering production of

8

primary documents pertaining to all class members) *with Boucher v. First American Title Ins. Co.*, 2011 WL 5299497, at *2 (W.D. Wash. Nov. 4, 2011) (in bifurcated pre-certification discovery, holding that sampling appropriate "at this stage of the case").

We also note that defense counsel has indicated a willingness to consider providing further categories of this information, perhaps now, or perhaps contingent upon class certification. The parties continue to confer on this topic and there is some possibility of a resolution on this issue. Due to the late date (the close of discovery), however, Plaintiff elected not to further delay this element of this motion.[5]

### 4. HMS Should Be Required to Produce Documents in the Possession or Custody of Franchisees Who Conduct HMS' Marketing Operations in at Least Three Regions, Including the Mid-Atlantic Region.

Documents in the possession of REMS and other franchisees[6] are within the possession, custody, and control of HMS.[7] Courts within the Fourth Circuit regularly order the production of documents in the possession of a related entity when those documents are under the custody or control of a party to the litigation.[8] In making this determination, courts consider several

---

[5] Additionally, HMS should also be required to produce the spreadsheet in its source format (likely Microsoft Excel) so that Plaintiffs can calculate the total amounts paid during the Class Period. HMS should be required to augment the spreadsheet with additional data fields sufficient to identify the class members who paid for the warranties, as well as the amount of the fees paid to the brokers. HMS should also be required to augment this database on an ongoing basis, if the class is certified. Plaintiff continues to defer with defense counsel on these points, which the parties may be able to resolve in advance of the hearing.

[6] It is not disputed that HMS' marketing operations also are conducted by franchisees in two other multi-state regions: the Midwest region (which appears to include Western Pennsylvania, Ohio, Indiana, Kentucky and Michigan), and the West region (Utah, Montana and Wyoming). There are also single-state franchises in Illinois, Tennessee, Arkansas and South Carolina.

[7] "Control" over documents in the context of Federal Rule of Civil Procedure 34 is "defined as actual possession of a document or the legal right to obtain the document on demand." *Hatfill v. New York Times Co.*, 242 F.R.D. 353, 354 (E.D.Va. 2006) (internal citations omitted).

[8] *See Steele Software Sys., Corp. v. Dataquick Info. Sys., Inc.*, 237 F.R.D. 561, 565 (D.Md. 2006) (holding that "readily available" documents in possession of entities closely related to plaintiff were within

factors, including: (1) the corporate structure of the party/nonparty, (2) the nonparty's connection to the transaction at issue in the litigation, (3) the degree that the nonparty will benefit from the outcome of the case, (4) whether the related entities exchange documents in the ordinary course of business, and (5) whether the nonparty has participated in the litigation. *Steele Software Systems, Corp. v. DataQuick Information Systems, Inc.*, 237 F.R.D. 561, 564 (D.Md. 2006) (internal citations omitted).

REDACTED

---

plaintiffs control); *American Angus Ass'n v. Sysco Corp.*, 158 F.R.D. 372, 375 (W.D.N.C. May 23, 1994); *Uniden America Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 305 (M.D.N.C. 1998).

REDACTED

appears, in procuring the assistance of a friendly real estate agent as a witness. Miller Decl., ¶ 41.

### B. The Court Should Compel the Appearance of the Two Local Franchise Officers and Cooperating Real Estate Witness.

Counsel for the witnesses contend, in a letter articulating their objections to appearing for their depositions, that (1) the subpoenas were not properly served, (2) the subpoenas were defective because they literally commanded the appearance of the witnesses on "December 7 2010," and (3) and that they should not be enforced due to failure to comply with Local Rule 30(H). These contentions are without merit.

#### 1. Plaintiff's Service of the Witnesses was Sufficient.

On November 29, 2011, Plaintiff prepared, and delivered to a process server, subpoenas directed to Mr. Prigal, Ms. McCort and Mr. Pikovsky commanding their presence at depositions on December 7, 2011. Miller Decl., ¶ 32. The subpoenas are attached as Exhs. N, O, and P. On the evening of November 30, 2011, Mr. Prigal and Mr. Pikovsky were served with subpoenas by hand, as per the declaration attached as Miller Decl., Exh. Q. Service on Mr. Pikovsky and Mr. Prigal was made personally.

However, Plaintiff's process server was unable to personally serve Ms. McCort, who refused to come out of her home on two consecutive days. *See* Miller Decl., Exh. Q. On December 1, 2011, Plaintiff's counsel sent an email to Ms. McCort, requesting that she accept service of the subpoena Plaintiff's process server was attempting to serve on her. Miller Decl., Exh. R. A copy of the subpoena was attached to that email. *Id.* Ms. McCort never responded to that email. *Id.* On December 2, 2011, Plaintiff transmitted Ms. McCort's subpoena to her by Federal Express. Miller Decl., ¶ 37. The subpoena was delivered at her home on the morning of Saturday, December 3, 2011. Miller Decl., Exhibit S. This Court has recently joined a growing number of courts that have recognized the validity of service of subpoenas by mail or delivery services. *Bland v. Fairfax County, Va.*, 275 F.R.D. 466 (E.D. Va. 2011) (citing many other cases). That holding is particularly compelling under the facts of this case, in which the witness

11

evaded personal service of the subpoena, ignored the email transmission of the subpoena (which her counsel acknowledges she received), and her counsel, for whatever reason, continues to refuse to accept service of the subpoena on her behalf.

### 2. The Clerical Error in the Date on the Subpoenas Is Irrelevant.

On November 29, 2011, Plaintiff prepared subpoenas directed to Mr. Prigal, Ms. McCort and Mr. Pikovsky commanding their presence at depositions on "December 7, 2010." Miller Decl., ¶ 32. The subpoenas are attached as Exhs. N, O, and P. The year "2010" on the subpoenas was a clerical error, as the intention of the subpoena was to command their presence on December 7, 2011. Miller Decl., ¶ 32.

Courts, and sophisticated counsel and parties, generally ignore obvious clerical errors in subpoenas. *See Floorgraphics, Inc. v. News American Marketing In-Store Services, Inc.*, 2007 WL 1544572, *1 n.1 (D. Minn. May 23, 2007) (noting that "the requested date of production, as listed on the Subpoena, appears to be a typographical error, as the specified date of production preceded the date of issuance," but otherwise ignoring this defect); *Cohen v. City of New York*, 255 F.R.D. 110, 115 n. 2 (S.D.N.Y. 2008) (noting that subpoena issued in June 2006 impossibly requested documents generated through "September 4, 2006," but ignoring defect); *Atlantic Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 397 (N.D.Ill. 2002) (attorney's failure to sign subpoena is a "curable defect"). *Compare Doe I v. Pauliewalnuts*, 2008 WL 4326473, at *2 (W.D.Va. Sept. 19, 2008) (holding that where subpoena was issued from the wrong court, it was a jurisdictional defect and "not a simple clerical error"). There is no basis for failing to enforce the subpoenas due to a clerical error that would have been obvious to any rational person.

### 3. Local Rule 30(H) Should Not Preclude Enforcement of the Subpoenas.

Finally, the requirements of Local Rule 30(H) should not preclude enforcement of the subpoenas.

### a. Plaintiff Substantially Complied With Rule 30(H), as the Witnesses Had 12 Days Advance Notice of their Depositions.

Plaintiff's counsel informed Mr. Prigal, on November 25, 2011, that he intended to take his deposition, and even confirmed with Mr. Prigal that he would be available for deposition on December 6, 2007 (11 days later) or December 7, 2007 (12 days later). Miller Decl., ¶ 25. Plaintiff declined to formally serve him with a subpoena only because the witness represented that he would provide a declaration (which Plaintiff's counsel promptly transmitted to him on November 25, 2011). Miller Decl., Exh. U.

Plaintiff formally noticed the depositions of Mr. Pikovsky and Ms. McCort on November 25, 2011, serving a notice on counsel to HMS, under the (apparently mistaken) impression that they were officers of HMS.[10] As described in the Miller declaration, the Mid-Atlantic franchisee is the dominant home warranty marketer in the Washington, DC area (whereas HMS only has a 5% market share nationally) and is the "gorilla" in the HMS network– it is a tail that wags the dog that is HMS. There are also many significant indicia that HMS and its franchisees (particularly this one) operate in most pertinent respects as a single entity. Miller Decl., ¶ 41. These indicia include the fact that it appears that Mr. Pikovsky himself is actively participating in the defense of this action. Ms. McCort's family, moreover, owns the Mid-Atlantic franchise. Under these circumstances, the notice issued to HMS counsel should be sufficient to satisfy the requirements of Rule 30(H).

### b. Alternatively, There is Good Cause to Enforce the Subpoenas Even if They are Not in Literal Compliance With Rule 30(H).

Alternatively, the foregoing circumstances, even if they are not sufficient to constitute literal compliance with Rule 30(H), certainly constitute "good cause" for enforcing the subpoenas.

---

[10] Mr. Pikovsky holds himself out as a "Chief Operating Officer" with "HMS Home Warranty" and Ms. McCort holds herself out as a "District Manager" with "HMS Home Warranty." Miller Decl., Exh. T. It appears that virtually all employees in that region hold themselves out as such. *Id.*

With respect to Mr. Prigal, Plaintiff was only informed of his identity as a witness on November 23, 2011. Plaintiff only had a window of three days to effect service of a subpoena for a December 7, 2011 deposition. Moreover, it appears that Mr. Prigal misled Plaintiff's counsel (perhaps negligently, perhaps intentionally) into expecting delivery of a declaration which he never provided until (through counsel) after he was served.[11] Lastly, Mr. Prigal is not a typical neutral non-party witness – he has voluntarily provided testimony to HMS and is apparently a social or business associate of Mr. Pikovsky's. These circumstances are more than sufficient to constitute good cause to enforce the subpoena.

With respect to the two franchise witnesses, Mr. Pikovsky and Ms. McCort, they are hardly innocent bystanders to this action. They are officers of HMS' most important franchise, which operates, in most respects, as a single entity with HMS. Even if the notice served on HMS' counsel was not sufficient to put them on notice, there are ample grounds for finding good cause to enforce the subpoenas.

Finally, with respect to all three witnesses, it should be emphasized that the Plaintiff is not, at this point, moving to compel their appearance on short notice --- December 7, 2011 has come and gone. Plaintiff is, effectively, seeking a modest extension of discovery sufficient to *reschedule* the depositions. The witnesses will have had more than 11 days' notice by the time they are deposed, and the undersigned are certainly willing to accommodate their scheduling and location preferences.

### C. The Court Should Effect a Limited Extension of Discovery for Purposes of Facilitating the Discovery that is the Subject Matter of this Motion.

Finally, in order to effect the relief sought in this motion, Plaintiff requests a limited extension of discovery solely for purposes of obtaining the discovery that is the subject of this motion.

---

[11] His counsel provided the undersigned a copy of such a declaration on December 5, 2011, several days after Mr. Prigal was served with a subpoena. The declaration, however, differed in material respects from the draft sent by the undersigned on November 25, 2011, and does not obviate the need for the deposition.

Plaintiff is not requesting a general discovery extension. Plaintiff may later ask for leave to take additional discovery, such as the reconvening of one or more depositions (which Plaintiff would assent to take telephonically) if the need arises from documents or testimony provided as a result of this motion.

## III. Conclusion

For the reasons stated above, Plaintiff respectfully prays that his motion to compel be granted, and that (1) HMS be ordered to produce those categories of documents described above, and (2) two local franchise officers, and real estate witness who has voluntarily testified for HMS, be directed to appear for depositions.

December 9, 2011							CUNEO GILBERT & LaDUCA, LLP

							By:	/s/ Robert J. Cynkar
								Robert J. Cynkar (VSB No. 23349)
								106-A South Columbus Street
								Alexandria, VA 22314
								(202)789-3960 (telephone)
								(202)789-1813 (facsimile)
								rcynkar@cuneolaw.com

							Charles J. LaDuca
							Matthew E. Miller, *pro hac vice*
							CUNEO GILBERT & LaDUCA, LLP
							507 C Street, N.E., Washington, DC 20002
							(202) 789-3960

							Gary E. Mason
							MASON, LLP
							1625 Massachusetts Ave., NW, Suite 605
							Washington, D.C. 20036
							(202) 429-2290

							*Attorneys for Plaintiff Martin P. Kiefaber*