# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| MARTIN P. KIEFABER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HMS NATIONAL, INC., and 1ST CHOICE, INC. (d/b/a RE/MAX ALLEGIANCE),<br><br>Defendants. | Civil Case No. 1:10-cv-1194 |

## THIRD AMENDED COMPLAINT

Plaintiff Martin P. Kiefaber, individually and on behalf of all others similarly situated, alleges as follows upon personal knowledge as to his actions and upon information and belief based upon the investigation of his attorneys as to all other facts alleged in the Complaint.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, and Defendants regularly transact business in this District and are subject to personal jurisdiction in this District.

### PARTIES

3. Plaintiff Martin P. Kiefaber is a resident of Clifton, Virginia.

4. Defendant HMS National, Inc. ("HMS") is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.

5. Nonparty 1st Choice, Inc. ("Allegiance") is a Virginia corporation doing business as "RE/MAX Allegiance," with its principal place of business in Falls Church, Virginia. Allegiance is a franchisee and/or affiliate of RE/MAX, LLC ("RE/MAX"), a Delaware limited liability company with its principal place of business in Denver, Colorado.

**FACTUAL ALLEGATIONS**

6. HMS is in the business of providing "home warranties" that cover such things as the replacement and repair of electrical, plumbing, and heating and cooling systems, as well as the breakdown of major home appliances. The warranties are typically issued on an annual basis, for an annual premium, and may be renewed at the election of the homeowner.

7. A substantial percentage of home warranty contracts are purchased by buyers, or sellers, of residential real estate at the time of a real estate closing.

8. HMS has business relationships with real estate agents and brokers, including Allegiance and its employees and/or independent contractors, to provide incentives to real estate professionals to encourage purchasers and sellers of residential real estate to purchase HMS' home warranty plans. Specifically, HMS pays a kickback to the brokerage if the agent is able to cause the buyer or seller to purchase a HMS home warranty. Once the premium for the warranty is collected, HMS pays the real estate agents or brokers a portion of the premium that was paid by the home buyer or seller.

9. HMS pays kickbacks to real estate brokers and firms systematically, as a standard business practice. It is well known among real estate agents in the Washington, D.C. area that they will receive a kickback if they cause a purchaser or seller of a residential property to purchase a home warranty with HMS.

10. Other than assisting the purchaser and/or seller in completing the application form and marketing the home warranty product to prospective home purchasers and sellers, the real estate brokerages and agents who receive kickbacks from HMS do not perform any services for HMS. Assisting the purchaser and/or seller in completing the application form, to the extent it is a "service" at all, is nominal, and is not a compensable service under RESPA. Marketing services are not compensable services under RESPA.

11. Other than possibly assisting with the application form, agents who receive kickbacks from HMS do not perform any services for their clients or counterparties that are distinct from the primary services performed by the agents in their capacity as real estate agents. Assisting the purchaser and/or seller in completing the application form, to the extent it is a "service" at all, is nominal, and is not a compensable service under RESPA.

12. HMS does not require agents seeking to be paid referral fees to perform any services for HMS, the applicant, or any other person. HMS does not require verification of any kind that agents seeking to be paid referral fees have performed any services for HMS, the applicant, or any other person. The only requirements ever enforced by HMS are that (1) the agent's name appear on the application form, and (2) that the applicant or counterparty purchase a HMS home warranty contract. It is thus entirely irrelevant whether or not an agent has performed any other service of any kind for any person.

13. Plaintiff sold a home located in Arlington, Virginia. The transaction closed on November 19, 2009.

14. In connection with the home sale/purchase, the purchaser was represented by real estate agents Steven and Cherrie Thoman, who were employed at the time of their retention by Distinctive Real Estate, Inc., another affiliate of RE/MAX. Prior to the closing, the agents

became employed by Allegiance. The agents encouraged Plaintiff to purchase a HMS home warranty, ostensibly to protect the purchaser from possible expenses related to appliances or home HVAC, electrical or plumbing systems.

15. At the closing, one of the items among Plaintiff's closing costs listed on the Form HUD-1 was a charge of $399.00 for a one-year home warranty purchased from HMS.

16. The real estate transaction involved a "federally related mortgage loan" as that term is defined in 27 U.S.C. § 2602.

17. On or about December 7, 2009, a $60.00 payment was made from HMS to Allegiance (i.e., a portion that $399.00 charge that Plaintiff paid at closing) in exchange for referring Plaintiff's home warranty business to HMS.

18. HMS paid this charge to Allegiance for the referral.

19. With the possible exception of assisting the purchasers in completing an application form, neither Allegiance nor any of its employees, agents or affiliates performed any services for Plaintiff or the purchasers that were distinct from the primary services they performed as real estate agents.

20. With the possible exception of assisting the purchasers in completing an application form, neither Allegiance nor any of its employees, agents or affiliates performed any services for HMS.

21. Neither Allegiance nor any of its employees, agents or affiliates conducted any inspection of home appliances or systems that they would not have otherwise conducted as part of the primary services they performed as real estate agents.

22. Neither Allegiance nor any of its employees, agents or affiliates took any photographs of home appliances or systems distinct from photographs that they may have taken

(*e.g.,* in the course of preparing marketing brochures) as part of the primary services they performed as real estate agents.

23. Neither Allegiance nor any of its employees, agents or affiliates recorded any serial numbers of home appliances or systems.

24. Neither Allegiance nor any of its employees, agents or affiliates submitted to HMS any serial numbers of home appliances or systems. Neither Allegiance nor any of its employees, agents or affiliates submitted to HMS any photographs. Neither Allegiance nor any of its employees, agents or affiliates submitted to HMS any evidence that they had performed any service of any kind for any person. Neither Allegiance nor any of its employees, agents or affiliates submitted to HMS anything other than an application form.

25. HMS did not require, as a prerequisite for paying a referral fee to Allegiance, that Allegiance nor any of its employees, agents or affiliates submit any evidence that they had performed any service of any kind for any person. HMS required only that (1) a home warranty contract be purchased, and (2) that the agents' names appear on the application form.

26. Section 8(a) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

27. The United States Department of Housing and Urban Development ("HUD"), the agency charged with the task of interpreting, enforcing, and promulgating regulations under RESPA, has issued an interpretive rule providing that, under Section 8 of RESPA, a "referral is not a compensable service for which a broker or agent may receive compensation." See HUD

5

Release, Real Estate Settlement Procedures Act (RESPA): Home Warranty Companies' Payments to Real Estate Brokers and Agents, dated June 18, 2010, at page 1, attached hereto as Exhibit A. "RESPA does not prohibit a real estate broker or agent from referring business to [a Home Warranty Company]. Rather, RESPA prohibits a real estate broker or agent from receiving a fee for such a referral, as a referral is not a compensable service…" but "an unlawful kickback…" Exhibit A at page 4. To illustrate, the interpretive rule explains that "as a real estate broker and agent hold positions of influence in the real estate transaction, a homebuyer or seller is more likely to accept the broker's or agent's promotion or recommendation of a settlement service provider. Therefore, marketing performed by a real estate broker or agent on behalf of [a Home Warranty Company] to sell a homeowner warranty to particular homebuyers or sellers is a 'referral' to a settlement service provider. Accordingly, in a transaction involving a federally related mortgage loan, [a Home Warranty Company's] compensation of a real estate broker or agent for marketing services that are directed to particular homebuyers or sellers would be a payment that violates section 8 of RESPA as an illegal kickback for a referral of settlement service business." Exhibit A at page 5.

28. Also, in a February 21, 2008 opinion letter, attached hereto as Exhibit B, HUD expressly found that arrangements where a real estate agent receives a fee only when a consumer purchases a home warranty product are in violation of Section 8 of RESPA. There, HUD noted that HUD's RESPA regulations define "settlement service" to include services involving homeowner's warranties. *See* Exhibit B at page 1, *citing* 24 C.F.R. §3500.2. HUD also noted that Section 8(c) of RESPA "provides an exception to [the] prohibition on fees and kickbacks [set forth in Section 8(a)] for bona fide compensation for goods or facilities actually furnished for services actually performed." Exhibit B at page 1. According to HUD, "payments

relate to homeowner warranties do not appear to be bona fide compensation. Because payments are based on the number of successful transactions, they appear to be payments made pursuant to an agreement or understanding to refer business to the [Home Warranty Company], and not payments for services actually performed." Exhibit B at 2. Characterizing "such arrangements as 'marketing' or 'administrative' agreements does not render the underlying conduct legal." *Id*. These kinds of payments made by home warranty providers to real estate agents are "only a means to facilitate payments for referrals by persons in a position to refer settlement service business, in violation of RESPA." *Id*.

29. Section 8(d)(2) of RESPA, 12 U.S.C. § 2607(d)(2), provides that "[a]ny person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service."

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this case as a class action, under Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated.

31. The Class consists of:

All persons in the United States who, between October 20, 2009 and December 31, 2011, purchased a home warranty contract from HMS (a) with respect to which HMS paid compensation to a real estate broker and (b) where the Home warranty contract was purchased in connection with the purchase or sale of a home in a real estate transaction subject to RESPA

32. Plaintiff reserves the right to re-define the Class prior to moving for class certification.

33. Plaintiff does not know the exact size or identities of the proposed Class, since such information is in the exclusive control of Defendants. Plaintiff, however, believes that the

HMS Class encompasses at least tens of thousands of individuals who are geographically dispersed throughout the United States, and that the Allegiance class encompasses at least one hundred individuals principally located in the Washington, DC area. Therefore, the number of persons who are members of the Classes described above are so numerous that joinder of all members in one action is impracticable

34. Questions of law and fact that are common to the Class predominate over individual questions because the actions of the defendants complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

    a. The nature, scope and operations of the wrongful practices of Defendants;

    b. Whether Defendants had a policy and uniform practice of violating RESPA in connection with the sale of home warranties; and

    c. The proper measure of damages.

35. Plaintiff's claims are typical of the members of the Plaintiff Class because Plaintiff and all members of the Plaintiff Class were injured by the same wrongful practices of Defendants as described in this Complaint. Plaintiff's claims arise from the same practices and course of conduct that gives rise to the claims of the Class members, and are based on the same legal theories. Plaintiff has no interests that are contrary to or in conflict with those of the Classes he seeks to represent.

36. Questions of law or fact common to the members of the Class predominate and a class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims and defenses of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by Plaintiff Class members are likely to be in the millions of dollars, the individual damages

incurred by each Plaintiff Class member resulting from the wrongful conduct of the Defendants, as a general matter, too small to warrant the expense of individual suits. The likelihood of individual members of the Plaintiff Class prosecuting separate claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and tot eh court system resulting from multiple trials o the same factual issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action and certification of the Plaintiff Classes.

37. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to members of the Class as a whole and certification of the Class under Rule 23(b)(2) is proper.

### COUNT I – VIOLATION OF 12 U.S.C. § 2607
### (Plaintiff, Individually, and on Behalf of the Class, Against HMS)

38. Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

39. HMS' payment of referral fees to Allegiance (and to other real estate firms and agents) is violative of 12 U.S.C. § 2607(a), which provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

40. Pursuant to 12 U.S.C. § 2607(d)(2), HMS is liable to all members of the Plaintiff Class "for an amount equal to three times the amount" paid by them for HMS home warranties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered upon Defendants as follows:

1. For economic and compensatory damages on behalf of Plaintiff and all members of the Plaintiff Classes in an amount equal to three times the amount of any charge paid for the settlement service of providing a home warranty;

2. Enjoining the Defendants from further engaging in the illegal conduct described above;

3. For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action;

4. For pre-judgment and post-judgment interest; and

5. For such other and further relief as this Court deems just and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 17, 2012    Respectfully submitted,

             CUNEO GILBERT & LaDUCA, LLP


             By: /s/ Robert J. Cynkar
               Robert J. Cynkar (VSB No. 23349)
               Daniel M. Cohen (VSB No. 79836)
               106-A South Columbus Street
               Alexandria, VA 22314
               (202)789-3960 (telephone)
               (202)789-1813 (facsimile)
               rcynkar@cuneolaw.com

Charles J. LaDuca
Matthew E. Miller, *pro hac vice*
CUNEO GILBERT & LaDUCA, LLP
507 C Street, N.E., Washington, DC 20002
(202) 789-3960

Alexandra C. Warren
CUNEO, GILBERT & LADUCA, LLP
106-A South Columbus St.
Alexandria, VA 22314
(202) 789-3960

Gary E. Mason
MASON, LLP
1625 Massachusetts Ave., NW, Suite 605
Washington, D.C. 20036
(202) 429-2290

*Attorneys for Plaintiff Martin P. Kiefaber*

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of January, 2012, I electronically filed the "Third Amended Complaint" with the Clerk of Court using the CM/ECF system, which then sent a notification of such filing (NEF) to the following:

Michael Ya'akov Kieval, Esq.
David Monro Souders, Esq.
Weiner Brodsky Sidman Kider PC
1300 19th St NW
Suite 500
Washington, DC 20036
202-628-2000
Fax: 202-628-2011
Email: kieval@wbsk.com

Dated: January 17, 2012                    Respectfully Submitted,


                                           /s/ Robert J. Cynkar
                                           Robert J. Cynkar
                                           Virginia bar number 23349
                                           Attorney for Plaintiff
                                           CUNEO, GILBERT & LADUCA, LLP
                                           507 C Street, NE
                                           Washington, DC 20002
                                           Phone: (202) 789-3960
                                           Fax: (202) 789-1813
                                           rcynkar@cuneolaw.com