UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARTIN P. KIEFABER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HMS NATIONAL, INC., )<br>)<br>Defendant. )<br>_____) | Case No. 1:10-cv-1194 (AJT/IDD) |

**MEMORANDUM OPINION**

The plaintiff Martin P. Kiefaber ("Kiefaber") has filed this action under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. Kiefaber claims that defendant HMS National, Inc. ("HMS"), a home warranty company ("HWC"), violated RESPA by paying illegal kickbacks and referral fees to real estate agents to promote its home warranty insurance in connection with real estate transactions. HMS claims that its payments to real estate brokers for home warranty insurance purchased in connection with real estate transactions were lawful under RESPA since the payment to brokers was for a "compensable service."

Before the Court is plaintiff's Motion for Class Certification [Doc. No. 91], in which plaintiff seek certification for the following class:

> All persons in the United States who, between October 20, 2009 and December 31, 2011, purchased a home warranty contract from HMS (a) with respect to which HMS paid compensation to a real estate broker and (b) where the Home warranty contract was purchased in connection with the purchase or sale of a home in a real estate transaction subject to RESPA.

The Court concludes that individual questions of fact as to each proposed class member predominate over any issues of law or fact common to the proposed class and therefore denies plaintiff's motion.

1

I. Standard of Review

Federal Rule of Civil Procedure 23(a) outlines the requirements for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Subsection (b) of Rule 23 describes the types of classes that may be certified; the parties agree that this case falls under Rule 23(b)(3). Pl. Br. 10; Def. Br. 16. That subsection explains that a class action may be maintained if Rule 23(a) is satisfied and if:

> The court finds that the *questions of law or fact common to class members predominate over any questions affecting only individual members*, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) The class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) The extent and nature of any litigation concerning the controversy begun by or against class members;
> (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) The likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3) (emphasis added). Importantly, Rule 23(b)(3)'s "predominance" requirement is "far more demanding" than Rule 23(a)'s "commonality" requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). In fact, in "a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting *Amchem*, 521 U.S. at 609). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to

2

warrant adjudication by representation." *Lienhart*, 255 F.3d at 147 (quoting *Amchem*, 521 U.S. at 623). The predominance requirement is the dispositive issue in this case.

## II. Discussion

Under RESPA, "[n]o person shall give . . . any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). However, § 2607(c) provides that "[n]othing in this section shall be construed as prohibiting . . . (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed . . . ." 12 U.S.C. § 2607(c).

The Department of Housing and Urban Development ("HUD") has issued an interpretive rule concerning the propriety of payments by home warranty companies to real estate brokers in connection with real estate transactions. *See* Home Warranty Companies' Payments to Real Estate Brokers and Agents, 75 Fed. Reg. 36,271 (June 25, 2010) ("Warranty Rule"). According to the Warranty Rule, home warranty sales sold in connection with a real estate settlement are subject to § 2607(a)'s prohibition on referral agreements. Nevertheless, under the Warranty Rule, RESPA does not prohibit a real estate broker from referring business to a HWC. *Id.* at 36,271. Rather, RESPA prohibits a broker from receiving a fee for that referral. *Id.* However, if the fee is for a "compensable service," then the fee is exempt from liability under § 2607(c). *Id.* In that regard, "services performed by real estate brokers and agents on behalf of HWCs are compensable as additional settlement services if the services are actual, necessary, and distinct from the primary services provided by the real estate broker or agent." *Id.* at

36,272 n.1. In order to evaluate whether a payment from an HWC is an unlawful kickback for a referral or a lawful payment for a "compensable service," the Warranty Rule identifies a number of relevant specific inquiries, including, among others, "the actual services provided in a particular case" and whether "only actual compensable services have been performed by a real estate broker or agent in a transaction." *Id.* at 36,272.

In evaluating the propriety of class certification, the central inquiry reduces essentially to what must be shown in order to establish liability; and in that regard, the parties in this case differ substantially. Kiefaber contends that liability rests on the subjective knowledge and intent of the HWC in paying a fee to a broker. Based on this contention, Kiefaber claims that a plaintiff can establish that a payment constitutes an unlawful referral payment by proving that a HWC did not know whether or not there were in fact compensable services performed by a broker before it paid a fee. In support of this position, Kiefaber argues that if the trier of fact determines that the HWC pays the broker "*for* the referral and not *for* any compensable services that may have been performed," then the relationship is an unlawful referral arrangement and liability attaches to each payment made. Under Kiefaber's view, the payment must be in exchange for the services rendered, not in exchange for the referral of business; and in order to avoid liability, HMS must show there is a direct link between the services provided and the payment. For these reasons, Kiefaber contends that he can establish liability by showing that "HMS does not know, does not try to know, and cannot possible know, whether brokers perform any of the supposed services (compensable or otherwise) and pays them regardless of whether they perform such tasks or not." Pl. Br. 8. Using

this formulation of liability, Kiefaber argues he can prove on a class-wide basis that HMS's arrangement with brokers was a referral arrangement and not a payment-for-services arrangement, making class certification appropriate.

HMS, on the other hand, contends that a payment is illegal only if the broker provided no "compensable services" in connection with the sale of the home warranty, regardless of whether HMS, in fact, knew that a compensable service had been performed. HMS therefore contends that in order for any particular class member to establish liability, that class member must show that the compensated broker, in fact, provided no compensable services in connection with that class member's real estate transaction. Def. Br. 8-13. On that basis, HMS contends that in order to establish its liability as to any particular class member, that class member must show (1) HMS paid a broker a fee for selling a home warranty at settlement and (2) the broker did not perform compensable services. According to HMS, this showing would require a "mini-trial" as to each class member and for that reason class certification is not appropriate. The Warranty Rule provides no direct guidance as to which of the parties' positions on liability are correct. However, HUD has issued an interpretative rule that did deal directly with when liability attaches under RESPA for payments by mortgage lenders to mortgage brokers in connection with a lender's issuance of a real estate loan. *See* Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Subsection 8(b), 66 Fed. Reg. 53,052 (October 18, 2001) ("YSP Rule").

Following certain litigation over the application of § 2607 to payments by lenders to mortgage brokers known as "yield spread premiums" ("YSPs"),[1] HUD issued the YSP Rule in October, 2001, in order to "eliminate any ambiguity concerning the Department's position with respect to [YSPs]." *See* YSP Rule, 66 Fed. Reg. at 53,052. Under the YSP Rule, the proper analysis to determine whether a YSP was legal under RESPA is to first consider whether the broker performed compensable services, and then determine whether the overall compensation the lender paid to the broker was reasonable. *Id.* at 53,055. The YSP Rule further provides that a YSP is neither *per se* legal nor *per se* illegal, and each YSP had to be assessed based on "the specific factual circumstances applicable to each transaction in which a [YSP] is used." *Id.* In that connection, the YSP Rule explicitly states that it is improper to require, as some courts had, that the defendant demonstrate that there was a clear and direct link between the "compensable services" the mortgage broker provided and the compensation that the lender paid the broker. *Id.* Rather, the YSP Rule places primary importance on whether compensable services had been provided, rather than whether the parties had agreed that the payment or fee, in the form of a YSP, was intended to cover those compensable services or was intended to be a payment for a referral of business. *Id.*

Following the issuance of the YSP Rule, the Eighth Circuit considered the application of § 2607 to YSPs under a theory of liability similar to that advanced here by Kiefaber, namely that if a plaintiff can prove that a broker fee "is payment *for* a prohibited referral rather than *for* facilities, goods, or services" then the fee is illegal under RESPA. *See Glover v. Standard Fed. Bank,* 283 F.3d 953, 963 (8th Cir. 2002)

---

[1] A "yield spread premium" is "a payment made by a [mortgage] lender to a [mortgage] broker in exchange for that broker's delivering a mortgage that is above the 'par rate' being offered by the lender." *Heimmermann v. First Union Mortg. Corp.* 305 F.3d 1257, 1259 (11th Cir. 2002).

(emphasis in original). In rejecting that theory, as the YSP Rule does explicitly, the Eighth Circuit suggested that its decision was mandated by the statute itself, and not just the YSP Rule, although the Court clearly deferred to and relied heavily on the YSP Rule. *See Id.* at 964 ("inventive minds making clever arguments can turn virtually *any* payment flowing from a lender to a broker, in connection with the placement of a mortgage loan, into a purported payment for the unlawful referral of business." (emphasis in original)). As the Court explained:

> Section [2607(c)] clashes with this result [advanced by the plaintiffs]. It clearly states that reasonable payments for goods, facilities or services actually furnished are *not prohibited* by RESPA, even when done in connection with the referral of a particular loan to a particular lender. The [plaintiffs'] approach tends to turn the interrelated sections upside down, putting total emphasis on the prohibitory language of Section [2607(a)] and no emphasis on the permissive language of Section [2607(c)].

*Id.* (emphasis in original). On the basis of this analysis, the Eighth Circuit, as well as other Circuits, have concluded that class certification in YSP cases is inappropriate. *See Glover*, 283 F.3d at 966; *Heimmerman*, 305 F.3d at 1263-64; *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1014 (9th Cir. 2002).[2]

The Warranty Rule does not provide the same guidance as the YSP Rule. Specifically, the Warranty Rule does not make explicit, as the YSP Rule does, the proper analysis in assessing whether payments for home warranties are legal or illegal. Nevertheless, for the purposes of determining how to assess liability under § 2607, the Court sees no material differences between a HWC's payments to real estate brokers in connection with the purchase of a home warranty and a lender's payments of YSPs to mortgage brokers in connection with the delivery of a loan. The Court therefore adopts,

---

[2] These courts have also held that §§ 2607(a) and (c) are ambiguous, and therefore deference to HUD's interpretations is appropriate. *Glover*, 283 F.3d at 961-63; *Heimmermann*, 305 F.3d at 1261; *Schuetz*, 292 F.3d at 1012-14.

for the purposes of assessing the legality of a HWC's payments, the analysis set forth in the YSP Rule and by the Eighth, Ninth, and Eleventh Circuits concerning YSPs. *Glover*, 283 F.3d at 966; *Heimmerman*, 305 F.3d at 1263-64; *Schuetz*, 292 F.3d at 1008. For those reasons, the Court concludes that in order to establish liability under § 2607 of RESPA, Kiefaber, or any plaintiff that becomes part of this lawsuit, must show that (1) HMS paid a broker a fee for selling a home warranty at settlement and (2) the broker did not perform compensable services under § 2607(c)'s carve out. Here, HMS contends that brokers did in fact provide compensable services; and Kiefaber has not established at this point that in no instance did a broker within the proposed class perform a compensable service.[3] Because a "determination that compensable services have been performed by the real estate broker or agent will be based on a review of the particular facts of each case" Warranty Rule, 75 Fed. Reg. at 36,272, the individual factual issues predominate over those common to the proposed class; and class certification is inappropriate under Rule 23(b)(3).

### III. Conclusion

For the above reasons, the Court concludes that class certification is inappropriate.

The Court will issue an order.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
February 10, 2012

---

[3] HMS has submitted certain exhibits and sworn declarations that support its contention that brokers in fact perform compensable services. *See* Stein Decl. Ex. 6.; Def. Ex. E (sworn declaration of Allan Prigal, a broker who sold HMS warranties, outlining the services he provides in connection with the sale of a warranty). *See also* Miller Decl. Ex. 3 (an example of an HMS form, which some brokers purportedly sign, which lists certain services that a broker will perform in connection with the sale of the home warranty, at least some of which appear to constitute "compensable services.").