UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARTIN P. KIEFABER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:10-cv-1194 (AJT/IDD) |
| ) | |
| HMS NATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Martin Kiefaber sold his Arlington, Virginia home on November 19, 2009. The buyers' real estate agent, Steven Thorman, who was affiliated with RE/MAX Allegiance ("RE/MAX"), assisted the buyers in acquiring a home warranty in connection with that transaction. The buyers requested that Kiefaber cover the cost of the home warranty. Kiefaber agreed and bought a $399 policy from defendant HMS National, Inc. ("HMS") that covered the home's appliances for one year. After Kiefaber funded the warranty, HMS paid RE/MAX $60 in connection with Thorman's involvement in the transaction. Kiefaber alleges that the $60 payment to RE/MAX was an illegal kickback for a referral in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq*. HMS defends this action principally on the grounds that the $60 payment was not an illegal referral fee but an authorized fee for services. This matter is now before the Court on cross-motions for summary judgment. (Doc. Nos. 171 and 173). For the reasons stated below, the Court concludes as a matter of law,

based on undisputed facts, that HMS paid the $60 fee for compensable services actually performed and that the fee was therefore not a prohibited referral fee.[1]

Title 12 of the United States Code, Section 2607(a) states, in pertinent part, that "[n]o person shall give . . . any fee, kickback, or thing of value pursuant to any agreement . . . that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). A companion section, § 2607(c), often referred to as the "carve out," provides that "[n]othing in this section shall be construed as prohibiting . . . the payment to any person of a bona fide salary or compensation or other payment . . . *for services actually performed* . . . ." 12 U.S.C. § 2607(c) (emphasis added).[2]

---

[1] Kiefaber clearly has statutory standing to bring this action. *See* 12 U.S.C. § 2607(d)(2). However, the parties also briefed the issue of whether or not Kiefaber has constitutional standing under Article III absent proof that he paid more for the warranty contract as a result of the alleged $60 referral fee. At the time the summary judgment motions were filed, the Supreme Court had granted a petition for certiorari in *First American Financial Corp. v. Edwards*, which raised the issue of whether a plaintiff, such as Kiefaber, satisfied the Article III standing requirement without proving an economic injury due to an alleged kickback. Because the decision in *First American* could have had been dispositive of this case, the Court postponed deciding these motions pending the outcome of *First American*. However, on the last day of its term, the Supreme Court dismissed the petition in *First American* as improvidently granted. *See First Am. Fin. Corp. v. Edwards*, 132 S. Ct. 2535 (2012). The Court has reviewed this issue and agrees with those courts that have concluded that someone in Kiefaber's position has Article III standing, without proof of the kind of "injury" that HMS claims is required. *See Edwards v. First Am. Corp.*, 610 F.3d 514, 518 (9th Cir. 2010); *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 989 (6th Cir. 2009); *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 755 (3d Cir. 2009); *Robinson v. Fountainhead Title Grp. Corp.*, 447 F. Supp. 2d 478, 486-77 (D. Md. 2006); *but see Durr v. Intercounty Title Co.*, 14 F.3d 1183, 824-26 (7th Cir. 1994); *Moore v. Radian Grp., Inc.*, 233 F. Supp. 2d 819, 824-26 (E.D. Tex. 2002), aff'd 69 F. App'x 659 (5th Cir. 2003); *Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474 (M.D.N.C. 2004); *see also Vermont Agency of Natural Res. v. United States*, 529 U.S. 765, 773-74 (2000) (holding that a relator has standing to sue on behalf of the United States government even though the relator himself did not suffer an injury-in-fact).

[2] The Court previously denied plaintiff's motion for class certification because the Court found that individual questions of fact predominated over the common issues of fact, making certification improper under Federal Rule of Civil Procedure 23(b)(3). (Doc. No. 159.) The Fourth Circuit refused to consider on the merits Kiefaber's interlocutory appeal on that ruling.

Here, there is no dispute that HMS paid the $60 fee and that the fee was "incident to a real estate settlement service involving a federally related mortgage loan." The only issue is whether the fee is "pursuant to an agreement . . . that business . . . shall be referred" or for services within the carve out set forth in § 2607(c). In making that determination, the Court has considered the interpretative rule issued by the Department of Housing and Urban Development ("HUD") with respect to § 2607, known as the Warranty Rule. *See* Home Warranty Companies' Payments to Real Estate Brokers and Agents, 75 Fed. Reg. 36,271 (June 25, 2010) ("Warranty Rule").[3]

The Warranty Rule discusses what constitutes a "referral" and describes what services qualify for the § 2607(c) carve out, dubbed "compensable services." In that regard, the Warranty Rule states that a "referral includes any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement

---

(Doc. No. 168.) Central to the Court's class certification ruling was the Court's conclusion that in order to establish a violation of the anti-kickback provision of RESPA, 12 U.S.C. § 2607(a), Kiefaber, and each member of the proposed class, "must show that (1) HMS paid a broker a fee for selling a home warranty at settlement and (2) the broker did not perform compensable services under § 2607(c)'s carve out." *Id.* at 8. Kiefaber requests that the Court reconsider its decision and hold that HMS has the burden, as an affirmative defense, to prove that Thorman provided compensable services. The Court reaffirms its earlier decision, but also concludes that its decision with respect to the pending summary judgment motions would be the same, whether or not the carve out in § 2607(c) translates into an element of a plaintiff's case in chief or an affirmative defense.

[3] At least one court has viewed an analogous HUD interpretive rule as merely a statement pertaining to administrative enforcement policy with respect to § 2607. *See Howland v. First Am. Title Ins. Co.*, 672 F.3d 525, 534 (7th Cir. 2012) (holding that certain HUD statements of policy on § 2607(c), similar to the Warranty Rule here, "do not provide a 'rule' at all. They simply convey HUD's sensible 'enforcement position' that it will scrutinize certain practices that *it believes* may indicate a violation of RESPA [§ 2607]" (emphasis added)); *see* Warranty Rule, 75 Fed. Reg. at 36,272 ("[t]o evaluate whether a payment . . . is an unlawful kickback . . . HUD may look [to various factors]"); *id.* ("HUD will review evidence on a case-by-case basis to determine whether compensation was a kickback"). Without taking a position on this issue, the Court finds the Warranty Rule's requirements at least helpful in assessing the scope of the prohibition in § 2607(c).

3

service . . . ." *Id.* at 36,272 (quoting 24 C.F.R. § 3500.14(f)). For example, "a real estate broker or agent actively promoting an HWC [home warranty company] and its products to sellers or prospective homebuyers by providing HWC verbal 'sales pitches' about the benefits of a particular HWC product" is no more than a referral of business. *Id.*[4] The Warranty Rule also makes clear, however, that RESPA does not prohibit a referral, only receiving a fee for such a referral.[5] To fall under the carve out, the Warranty Rule states that simply providing *any* service is insufficient; the agent or broker must provide a "compensable" service in order for the HWC to avoid liability. A "referral" cannot qualify as a "compensable service" for the purposes of § 2607(c). *Id.*

Under the Warranty Rule, "compensable services" are only those services that are "(1) actual, (2) necessary and (3) distinct from the primary services provided by the real estate broker or agent, (4) that are not nominal, and (5) for which duplicative fees are not charged." *Id.* at n.1 (numbers added). The Warranty Rule does not define these terms but does reference certain facts and circumstances probative of a compensable service:

---

[4] The Warranty Rule also reflects HUD's view that:

> [A] real estate broker or agent is in a unique position to refer settlement service business . . . [because] . . . a real estate broker and agent hold positions of influence in the real estate transaction, a homebuyer or seller is more likely to accept the broker's or agent's promotion or recommendation of a settlement service provider.

Warranty Rule, 75 Fed. Reg. at 36,272.

[5] The Warranty Rule states:

> RESPA does not prohibit a real estate broker or agent from referring business to a HWC. Rather, RESPA prohibits a real estate broker or agent from receiving a fee for such a referral, as a referral is not a compensable service.

Warranty Rule, 75 Fed. Reg. at 36,271.

4

- Services—other than referrals—to be performed are specified in a contract between the HWC and the real estate broker or agent, and the real estate broker or agent has documented the services provided to the HWC;

- The services actually performed are not duplicative of those typically provided by a real estate broker or agent;

- The real estate broker or agent is by contract the legal agent of the HWC, and the HWC assumes responsibility for any representations made by the broker or agent about the warranty product; and

- The real estate broker or agent has fully disclosed to the consumer the compensable services that will be provided and the compensation arrangement with the HWC, and has made clear that the consumer may purchase a home warranty from other vendors or may choose not to purchase any home warranty.

*Id.* at 36,272. The Warranty Rule also gives examples of services that HUD believes could be compensable, including "conducting actual inspections of the items to be covered by the warranty to identify pre-existing conditions that could affect home warranty coverage, recording serial numbers of the items to be covered, documenting the condition of the covered items by taking pictures and reporting to the HWC regarding inspections . . . ." *Id.* at n.2.[6]

---

[6] The Supreme Court recently considered § 2607 in *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034 (2012), decided after oral argument in this case. In a unanimous decision decided on May 24, 2012, the Supreme Court refused to give deference to HUD's interpretation of § 2607(b) pertaining to fee splitting and held that § 2607(b), which also exempts payments "for services actually performed," does not prohibit a settlement service provider from charging an excessive fee and "splitting" the excess amount with itself. *Id.* at 2040. In support of that holding, the Supreme Court concluded that Congress did not intend to regulate under RESPA the reasonableness of fees relative to the services provided. *Id.* at 2039-40. For that reason, *Freeman* teaches that the actual monetary value of a service actually performed is irrelevant in determining whether a payment is proper under § 2607. *Freeman* clearly raises issues as to what weight, if any, the Warranty Rule should be given. For example, the Warranty Rule requires that a payment for a compensable service be "reasonable" to fall within the § 2607(c) carve out. *See* Warranty Rule, 75 Fed. Reg. at 36,272-73 (explaining that if compensable services are provided then "that transaction-based compensation of that broker or agent that is *reasonable* would not be an indicator of an unlawful referral arrangement and would be permissible." (emphasis added)). This aspect of the Warranty Rule is glaringly inconsistent with the Supreme Court's discussion in *Freeman. See Freeman,* 132 S. Ct. at 2039-40 (holding that a HUD regulation stating that a fee must be "reasonable" under § 2607(b) "is manifestly inconsistent with the statute HUD purported to construe"). Less clear is *Freeman*'s impact on the Warranty Rule's requirement

Against this background, the Court examines whether RE/MAX received a prohibited "referral" fee or a payment for Thorman's qualifying "compensable" services. HMS contends that Thorman provided compensable services to HMS in the following respects:

(1) by obtaining and completing the home warranty paperwork at closing on behalf of the buyers;

(2) by ascertaining whether the appliances were in working order and reporting to HMS that, in fact, no appliances were excludable from the warranty as a result of being inoperable;

(3) by explaining the home warranty to the buyers;

(4) by attending the home inspection and reviewing the house inspection report; and

(5) by reviewing the HUD-1 Settlement Statement ("HUD-1") to confirm that the home warranty contract was included, that the warranty would be paid for at the closing, and that the proper party was charged.

Kiefaber does not dispute that Thorman obtained and completed the home warranty paperwork at the closing, explained the home warranty to the buyers, or reviewed the HUD-1 for the purposes of completing the home warranty transaction, as claimed in allegations (1), (3), and (5) above. *See* Def.'s Br. in Supp. of Summ. J. 3-4; Pl.'s Br. in Opp'n to Summ. J. 3. Kiefaber does contend that a factual dispute exists as to whether Thorman ascertained whether the appliances were inoperable and whether Thorman attended the home inspection, as HMS claims in allegations (2) and (4) above. Pl.'s Br. in Opp'n to Summ. J. 3. He also contends that none of

---

that a compensable service must be "necessary," "distinct from the primary services," not "nominal," or "duplicative" of other fees charged. In any event, for the reasons discussed in this Memorandum Opinion, the Court finds that the $60 payment to HMS was for "compensable services" as defined under the Warranty Rule.

6

the identified services are "compensable" for the purposes of § 2607(c) because they are not "necessary" or "distinct from the primary services by the real estate broker or agent,"[7] and are also "nominal."[8] *Id.* at 8 ("Plaintiff is entitled to summary judgment because none of the services that may have been performed by Mr. Thorman are compensable under RESPA."). Kiefaber also argues that Thorman's review of the HUD-1 form is a service for which the $60 fee is a duplicative charge. *Id.* at 13. The Court finds that Kiefaber has failed to create a genuine issue of material fact with respect to allegations (2)[9] and (4)[10] and therefore concludes that there is no dispute that Thorman provided all five services.

---

[7] It is unclear whether in order to be "distinct" services under the Warranty Rule, services must be distinct from those normally provided by the specific agent involved or whether the services must be distinct from those services normally provided as a matter of industry practice. In that regard, Kiefaber has filed a "Cross-Motion to Take Judicial Notice of Industry Custom, or, Alternatively, for Leave to Serve Expert Report" (Doc. No. 189) in order to prove general custom. The Court concludes that the "distinctiveness" requirement under the Warranty Rule is to be assessed by the services normally provided by the specific agent involved in the transaction, not industry practice. *See* Warranty Rule, 75 Fed. Reg. at 36,271 (holding that the services must be "distinct from the primary services provided by *the* real estate broker or agent . . . ." (emphasis added)). For this reason, evidence of industry custom is irrelevant; and on this and other grounds, the Court will deny Kiefaber's pending motion by separate order.

[8] In light of *Freeman, see supra* note 6, the Court has assessed whether Thorman's services were "nominal," not in terms of their value, but their substance relative to what needs to be done in order to consummate the warranty transaction.

[9] In support of its assertion that Thorman examined the appliances, HMS relies on Thorman's Second Declaration, where he states that, based on his review of the home inspection report and his familiarity with the property, "I reported to HMS on the home warranty application that no appliances or systems should be excluded from the warranty by reason of being in non-working order." Second Thorman Decl. ¶ 15. Kiefaber claims a genuine issue of material fact exists because, in Thorman's First Declaration, he states, "I did not perform any inspection of home appliances or systems other than the visual examination I customarily perform for purchasers who I represent." First Thorman Decl. ¶ 7. Kiefaber also claims in this regard that (a) Thorman's Second Declaration is insufficient because "Thorman identifies no steps he took to ascertain such knowledge" and (b) Thorman failed to report to HMS several appliances that were at the "end of life," as described by the inspection report, which proves that he did not actually "ascertain" whether the appliances were in working order. Pl.'s Br. in Opp'n to Summ. J. 3. The Court finds that Kiefaber has failed to create a genuine issue of material fact. Whether or not Thorman

Based on the above undisputed facts, the Court concludes as a matter of law that Thorman's services were "compensable" with respect to the home warranty transaction at issue in this case. Thorman performed actual services for the benefit of HMS that he would not have otherwise engaged in simply as the buyers' real estate agent. He, in fact, explained the home warranty to the buyers, obtained and completed the warranty application, and reviewed the HUD-1 form to confirm that the warranty contract was included and would be funded. He also made the representation to HMS on the warranty application that no appliances in Kiefaber's home needed to be excluded from the warranty's coverage because they were all in proper operating condition.[11] Someone needed to perform these services in order for the home warranty contract to be issued. HMS, without someone acting on its behalf, was not in a position to

---

actually examined the home appliances is immaterial to whether Thorman made the necessary representations to HMS.

[10] In support of its assertion that Thorman attended the home inspection, HMS relies on Thorman's Second Declaration, where he states, "I attended the home inspection and reviewed the home inspection report." Second Thorman Decl. ¶ 11. In support of his argument that there is a genuine issue of fact, Kiefaber relies on his own deposition testimony that Thorman asked him to give the home inspector the combination to the lockbox that contained the house key. Pl.'s Ex. 11, 41:3-11("I don't believe [Thorman] was there because he wanted me to give the lock box code to the inspector directly."). However, in that same deposition, Kiefaber admitted that he was not present at the home inspection, and, therefore, does not have any personal knowledge of whether Thorman attended the inspection. *Id.* As such, Kiefaber fails to create a genuine issue of fact whether Thorman attended the inspection.

[11] As discussed, *see supra* note 9, it is immaterial whether Thorman failed to ascertain the condition of certain appliances in connection with his representations to HMS. The relevant issue is not whether Thorman performed his job correctly; the issue is only whether he actually provided a service. From HMS's perspective, Thorman ascertained that the appliances were in working order and made representations to that effect. To the extent that Thorman failed in his duties, HMS may have a breach of contract or misrepresentation claim against Thorman for his failures, including a forfeiture of any fee paid in connection with those services. *See* Stein Decl., Ex. 2 ("[t]he HMS Member noted above shall remain eligible for this administrative and processing fee so long as they remain in compliance with the performance of these services and this agreement remains in effect."). Any such failure does not, however, make his services non-compensable for the purposes of § 2607.

8

engage in these activities directly; HMS did not have access to the property, any inspection reports, seller-disclosures, the HUD-1, or any other documents that would have provided the required information. They were also services that HMS could not expect to be performed in the ordinary course by those involved in the real estate sales transaction.[12] In short, the services were "actually performed," "necessary," "separate and apart" from Thorman's regular duties as a real estate agent, and not "nominal." As such, HMS' $60 payment to RE/MAX constituted an authorized payment "for services actually performed."

For the above reasons, the Court finds and concludes as a matter of law based on undisputed facts that Thorman engaged in services that were compensable and that defendant's payment to RE/MAX in connection with a home warranty did not violate § 2607. The Court will therefore grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment.

The Court will issue an appropriate Order.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
August 3, 2012

---

[12] No doubt for these reasons, HMS requires in its agreement with real estate brokers and agents that these services be provided on its behalf in connection with the issuance of a HMS home warranty contract. *See* Def.'s Br. in Supp. of Summ. J. 3; Stein Decl. ¶¶ 9-16; Stein. Ex. 2. That agreement further supports the conclusion that the services provided were "compensable." *See* Warranty Rule, 75 Fed. Reg. at 36,272 (explaining that an agreement between the HWC and real estate broker, which outlines what services are to be performed in connection with the sale of a home warranty, is indicative of a valid transaction falling under the carve out). Kiefaber contends that a factual dispute exists as to whether RE/MAX and HMS actually entered into such an agreement. Based on the summary judgment record, the Court finds there is no factual dispute as to whether HMS and RE/MAX entered into a written agreement outlining the services HMS expected RE/MAX agents would provide. The Court also concludes, however, that its finding in this regard is unnecessary to the Court's decision to enter summary judgment in favor of HMS.